James B. King, WSBA #8723
Evans, Craven & Lackie, P.S.
818 W. Riverside, Suite 250
Spokane, WA 99201-0910
(509) 455-5200; fax (509) 455-3632

# UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| MILDRED SHANKLIN, individually and as the personal representative of the ESTATE OF JOHN SHANKLIN,<br><br>Plaintiff,<br><br>vs.<br><br>COULEE MEDICAL CENTER, a medical care facility that is fully owned and operated by the Douglas, Grant, Lincoln, & Okanogan County Hospital District No. 6; DOUGLAS, GRANT, LINCOLN & OKANOGAN COUNTY HOSPITAL DISTRICT NO. 6, *et al.,*<br><br>Defendants. | Case No.   CV 17-377-RMP<br><br>DEFENDANTS' FED. R. CIV. P. 12(b)(6) MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED AND BRIEF IN SUPPORT THEREOF<br><br>Oral Argument Requested<br><br>**Date and Time to Be Determined Upon Consultation With Counsel** |

*Evans, Craven & Lackie, P.S.*
818 W. Riverside, Suite 250
Spokane, WA 99201-0910
(509) 455-5200; fax (509) 455-3632

COME NOW Defendants, by and through their undersigned counsel, and pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) move to dismiss Plaintiff's 42 U.S.C. § 1396, § 1396r, and § 1983 claims. Finally, Defendants move to dismiss Plaintiff's state law claims for lack of subject matter jurisdiction.

## I.    INTRODUCTION

Plaintiff filed a Complaint in the Eastern District of Washington on November 8, 2017, alleging violations of 42 U.S.C. § 1396, § 1396r, and § 1983 by Coulee Medical Center (CMC) and four individuals who were CMC employees. The Complaint also alleges claims under RCW 4.20.060 and RCW 74.34.200 in addition to claims for wrongful death, and intentional and negligent infliction of emotional distress.

Plaintiff's federal statutory causes of action – brought under 42 U.S.C. § 1396 and § 1396r – are premised on the theory that CMC is governed by the Federal Nursing Home Reform Amendments ("FNHRA," 42 U.S.C. § 1396 et. seq). Plaintiff claims CMC, through its alleged acts and omissions, breached various duties owed to the deceased, John Shanklin, provided for under FNHRA. Plaintiff's claims fail for two independent reasons: (1) CMC is not a nursing home, and is therefore, not governed by the provisions in FNHRA, and (2) Even if CMC did fall under the purview of FNHRA, FNHRA does not provide for a private right

DEFENDANTS' MOTION TO DISMISS - page 2

*Evans, Craven & Lackie, P.S.*
818 W. Riverside, Suite 250
Spokane, WA 99201-0910
(509) 455-5200; fax (509) 455-3632

of action for alleged violations against either the defendant entity or the individual defendants.

The legal basis for Plaintiff's 42 U.S.C. § 1983 claim is unclear.  Section 1983 is a vehicle to enforce existing rights, it does not create new rights. Plaintiff only alleges a constitutional right to "quality care." No such right exists. To the extent FNHRA is the basis for such a right, the claim should be dismissed as set forth above.

Plaintiff's supplemental state law claims brought under RCW 4.20.060, RCW 74.34.200, and for intentional and negligent infliction of emotional distress are before the Court based upon federal question jurisdiction under 42 U.S.C. § 1396, § 1396r, and § 1983. Once the Court dismisses Plaintiff's federal claims for the reasons described herein, the Court should exercise its discretion declining supplemental jurisdiction over Plaintiffs remaining state law claims.

## II.    LAW & ARGUMENT

### A.    Motion to Dismiss Pursuant to Rule 12(b)(6)

A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure can be based on the failure to allege a cognizable legal theory or the failure to allege sufficient facts under a cognizable legal theory. *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 533–34 (9th Cir.1984). To withstand a motion

*Evans, Craven & Lackie, P.S.*
818 W. Riverside, Suite 250
Spokane, WA 99201-0910
(509) 455-5200; fax (509) 455-3632

to dismiss pursuant to Rule 12(b)(6), a complaint must set forth factual allegations sufficient "to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). The Court, in considering a motion to dismiss, must accept as true the allegations of the complaint in question, *Hospital Bldg. Co. v. Rex Hospital Trustees*, 425 U.S. 738, 740, 96 S.Ct. 1848, 48 L.Ed.2d 338 (1976), must construe the pleading in the light most favorable to the party opposing the motion, and must resolve factual disputes in the pleader's favor, *Jenkins v. McKeithen*, 395 U.S. 411, 421, 89 S.Ct. 1843, 23 L.Ed.2d 404, reh'g denied, 396 U.S. 869, 90 S.Ct. 35, 24 L.Ed.2d 123 (1969). The allegations must be factual in nature. *See Twombly*, 550 U.S. at 555 ("a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do").

Plaintiff has failed to state a claim upon which relief can be granted because Defendants are not subject to FNHRA and because alleged violations of FNHRA are not enforceable under 42 U.S.C. § 1983 for the reasons set forth below.

**B.**   **Plaintiff's Claims under 42 U.S.C. § 1396 and § 1396r Must Be Dismissed Because CMC is not a Nursing Home as Defined by FNHRA**

**i.**   **42 U.S.C. § 1396**

Paragraph 5.2 of Plaintiff's Complaint alleges:

*Evans, Craven & Lackie, P.S.*
818 W. Riverside, Suite 250
Spokane, WA 99201-0910
(509) 455-5200; fax (509) 455-3632

> CMC is governed by the FNHRA, 42 U.S.C. § 1396 et. seq. that sets out requirements for hospital facilities that provide extended care services. CMC receives Medicare and Medicaid reimbursements and payments for the services rendered to decedent John Shanklin and other similarly situated patients.

ECF No. 1, pg. 8.

42 U.S.C. § 1396(a) provides the following:

> There is hereby established the Medicaid and CHIP Payment and Access Commission (in this section referred to as "MACPAC").

MACPAC is a non-partisan legislative branch agency that provides policy and data analysis and makes recommendations to Congress, the Secretary of the U.S. Department of Health and Human Services, and the states on a wide array of issues affecting Medicaid and the State Children's Health Insurance Program (CHIP). In other words, 42 U.S.C. § 1396(a) sets forth the requirements for state plans for medical assistance.

Nothing in 42 U.S.C. § 1396 purports to set out requirements for hospital facilities that provide extended care services like CMC. Instead, the various provisions of 42 U.S.C. § 1396 set forth the duties and obligations of MACPAC in determining Medicaid reimbursement to the states.

**ii.    42 U.S.C. § 1396r**

Plaintiff identifies a number of individual sections under 42 U.S.C. § 1396r that CMC was allegedly required to follow in its care of Mr. Shanklin, including

DEFENDANTS' MOTION TO DISMISS - page 5

*Evans, Craven & Lackie, P.S.*
818 W. Riverside, Suite 250
Spokane, WA 99201-0910
(509) 455-5200; fax (509) 455-3632

(b)(1)(A),  (b)(2)(A),  (b)(3)(A),  (b)(2)(C),  (b)(3)(C)(i)(l)  and  (ii),  (b)(3)(D), (b)(4)(B), (b)(4)(A)(ii), and (v), and (b)(6)(C). *See Exhibit A to Declaration of James B. King*.[1]

42 U.S.C. § 1396r (a)(1)(A)-(C) defines a nursing facility as follows:

(a) "Nursing facility" defined

In this subchapter, the term "nursing facility" means an institution (or a distinct part of an institution) which—

(1) is primarily engaged in providing to residents—

(A) skilled nursing and related services for residents who require medical or nursing care,

(B) rehabilitation services for the rehabilitation of injured, disabled, or sick persons, or

(C) on a regular basis, health-related care and services to individuals who because of their mental or physical condition require care and services (above the level of room and board) which can be made available to them only through institutional facilities…

CMC is not a nursing facility as defined by 42 U.S.C. § 1396r. CMC is a Critical Access Hospital (CAH). A CAH is a designation given to eligible rural hospitals by the Centers for Medicare and Medicaid Services (CMS). *See*

---

[1] In deciding a motion to dismiss, a court is not limited to the four corners of the complaint, but may also refer to documents incorporated by reference or integral to the claims of the complaint. *Sams v. Yahoo! Inc*., 713 F.3d 1175, 1179 (9th Cir. 2013).

DEFENDANTS' MOTION TO DISMISS - page 6

*Declaration of Ramona Hicks*.[2] The CAH designation is designed to reduce the financial vulnerability of rural hospitals and improve access to healthcare by keeping services in rural communities. *Id*. To accomplish this goal, CAHs receive certain benefits, such as cost-based reimbursement for Medicare services. *Id*.

CMC decertified its last two remaining nursing home beds effective December 31, 2007, well before Mr. Shanklin became a patient at CMC. *Id*. Since December 31, 2007, the long term care area of CMC has been administered under the Critical Access Hospital (CAH) program. *Id*. During the time Mr. Shanklin was a patient at CMC, the billing for the long term swing bed care portion of Mr. Shanklin's care was billed to the Washington Department of Social and Health Services (DSHS) through One Health Port as: Hospital – Swing bed, not as a nursing home or skilled nursing facility. *Id*.

On CMC's cost report, no nursing facility days are reported. *Id*. When CMC submits bills to DSHS for reimbursement, CMC has been instructed by DSHS to choose the option for "hospital" within the billing software and then click on "Swing Beds." *Id*. CMC does have a Swing Bed Provider Number with CMS. *Id*.

---

[2] The "court may take judicial notice of adjudicative facts which are not subject to a reasonable dispute." *United States v. Elias*, No. CR-98-70-E-BLW, 2008 WL 4545192, at *5 (D. Idaho 2008) (citing F.R.E. 201). See also footnote 1 *supra*.

DEFENDANTS' MOTION TO DISMISS - page 7

A swing bed is a bed that can be used for either acute care or post-acute care that is equivalent to skilled nursing facility (SNF) care. *Id*. CMS approves CAHs, and other hospitals, to furnish swing beds, which gives the facility flexibility to meet unpredictable demands for acute care and SNF care. *Id*. Swing beds offer an alternative to SNFs. This option may be useful in rural areas, which are less likely to have a stand-alone SNF. *Id*. Swing bed services in CAHs are eligible for cost-based reimbursement, while swing bed services in non-CAH small rural hospitals are paid under the SNF prospective payment system. *Id*.

CMC is not a nursing facility as defined by 42 U.S.C. § 1396r. Because it is not a nursing facility, CMC is not governed by FNHRA and Plaintiff's claims against CMC under FNHRA must be dismissed.

**C.** **Even if CMC Was Governed by FNHRA, There Is No Private Cause of Action provided in 42 U.S.C. § 1396 or § 1396r that Can Be Enforced through 42 U.S.C. § 1983**

Pursuant to 42 U.S.C. § 1983, an individual may obtain relief for a violation of a federal statutory or constitutional right against anyone who, under color of state law, deprives that individual of such right. *Blessing v. Freestone*, 520 U.S. 329, 340, 117 S.Ct. 1353, 137 L.Ed.2d 569 (1997). In order to state a claim for relief under § 1983, Plaintiff bears the burden of establishing that FNHRA confers upon her an individual federal right, i.e., it is not enough to show that Defendants

DEFENDANTS' MOTION TO DISMISS - page 8

*Evans, Craven & Lackie, P.S.*
818 W. Riverside, Suite 250
Spokane, WA 99201-0910
(509) 455-5200; fax (509) 455-3632

have violated FNHRA. *See Id*. at 342, 117 S.Ct. 1353. In *Blessing*, the Supreme

Court developed a three-part test for determining whether a statute confers an

individual federal right:

> First, Congress must have intended that the provision in question
> benefit the plaintiff. Second, the plaintiff must demonstrate that the
> right allegedly protected by the statute is not so 'vague and
> amorphous' that its enforcement would strain judicial competence.
> Third, the statute must unambiguously impose a binding obligation
> on the States. In other words, the provision giving rise to the asserted
> right must be couched in mandatory rather than precatory terms.

*Id* at 340-341, 117 S.Ct. 1353.

The Supreme Court further revised the first factor of the *Blessing* test to

require a showing that Congress unambiguously intended to confer a private right

upon the statute's beneficiaries. *Gonzaga Univ. v. Doe*, 536 U.S. 273, 280, 122

S.Ct. 2268, 153 L.Ed.2d 309 (2002). "Unless Congress 'speak[s] with a clear

voice,' and manifests an 'unambiguous' intent to confer individual rights, federal

funding provisions provide no basis for private enforcement by § 1983." *Id*.

(*quoting Pennhurst State School and Hospital v. Halderman*, 451 U.S. 1, 17, 101

S.Ct. 1531, 67 L.Ed.2d 694 (1981)).

In order to determine whether Congress, in passing FNHRA,

unambiguously intended to confer an individual federal right enforceable under 42

U.S.C. § 1983, the Court must examine both the plain language and the

*Evans, Craven & Lackie, P.S.*
818 W. Riverside, Suite 250
Spokane, WA 99201-0910
(509) 455-5200; fax (509) 455-3632

enforcement scheme of FNHRA to determine whether the statute is sufficiently "rights-creating." *See Gonzaga*, 536 U.S. at 286, 122 S.Ct. 2268.

### i.    Plain Language of FNHRA

There is no question that nursing facility residents receive a benefit that naturally flows from the requirement that nursing facilities comply with FNHRA (which they must do in order to receive Medicaid and Medicare funding). *Hawkins v. County of Bent, Colo.*, 800 F. Supp.2d 1162, 1166 (D.Colo. 2011). However, merely because Congress intended to benefit nursing home residents through FNHRA regulations does not mean that Congress intended to bestow an individual enforceable right against them. *Id*. "…[I]t is *rights*, not the broader or vague 'benefits' or 'interest,' that may be enforced under the authority of [§ 1983]." *Gonzaga*, 536 U.S. at 283, 122 S.Ct. 2268. Even when a statute speaks in terms of rights, there is no presumption of enforceability. *Pennhurst State Sch. & Hosp. v. Halderman*, 451 U.S. 1, 18–20, 101 S.Ct. 1531, 67 L.Ed.2d 694 (1981). As such, Congress's intent to confer rights, and not just benefits, must be unambiguous. *Hawkins*, 800 F.Supp.2d at 1166.

In order to determine whether Congress unambiguously intended to confer an enforceable private right, the language of the statute must be "phrased in terms of the persons benefitted," not the persons regulated. *Gonzaga*, 536 U.S. at 284,

DEFENDANTS' MOTION TO DISMISS - page 10

122 S.Ct. 2268 (*citing Cannon v. Univ. of Chi.*, 441 U.S. 677, 692, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979)). Although FNHRA refers to the members of the benefitted class (residents), FNHRA is phrased in terms of the regulated class (nursing facilities), not the benefitted class. *Hawkins*, 800 F.Supp.2d at 1167. FNHRA provisions focus on what state nursing facilities must do to maintain funding, not on the benefits received by the residents. *Id*; *See also Duncan v. Johnson–Mathers Health Care,* Inc. No. 09–CV–417, 2010 WL 3000718, at *8 (E.D.Ky.2010) (unpublished) (although "the FNHRA clearly speaks of the rights of nursing home residents, the focus of the statute is on setting forth requirements that nursing homes must follow to maintain their certifications and eligibility for federal funding.").

Under *Gonzaga*, Congress's intent is ambiguous when a provision focuses on the entity regulated (i.e., the nursing homes), not the persons benefitted (i.e., the patients). *Hawkins*, 800 F. Supp. 2d at 1167.

### ii.   <u>Enforcement Provisions</u>

"In expounding a statute, we must not be guided by a single sentence or member of a sentence, but look to the provisions of the whole law, and to its object and policy." *Pennhurst*, 451 U.S. at 19, 101 S.Ct. 1531.

FNHRA, taken as a whole, indicates that Congress did not consider creating

*Evans, Craven & Lackie, P.S.*
818 W. Riverside, Suite 250
Spokane, WA 99201-0910
(509) 455-5200; fax (509) 455-3632

a private right of action. *Hawkins*, 800 F. Supp.2d at 1168. Even though certain provisions of FNHRA do confer a benefit on residents, the enforcement provisions demonstrate that Congress intended that FNHRA was to be enforced only by the Secretary of Health and Human Services ("Secretary") and the State, not through individual actions under a federal statute. *Id*. Through FNHRA, Congress bolstered the enforcement methods available to the Secretary by providing the Secretary with a great number of sanctions and tools to "bring substandard facilities into compliance with Medicaid quality of care requirements or to exclude them from the program." *Id*; H.R.Rep. No. 100–391(I), at 452 (1987), U.S. Code Cong. & Admin. News 1987, pp. 2313–1, 2313–272. Congress's purpose was to strengthen the methods of enforcement available to the Secretary, not to provide individuals with enforceable rights. *Id*. If Congress had intended to create an enforceable individual right, Congress could have easily included a provision affirmatively granting individuals a right of enforcement as it did for the Secretary and the State. *Id*.

### iii.    <u>Ninth Circuit Interpretation</u>

The Ninth Circuit has scant case law regarding whether FNHRA provides for a private right of action enforceable through 42 U.S.C. § 1983. In *Sanguinetti v. Avalon Health Care, Inc.*, WL 2521536 (E.D. Cal. 2012), the plaintiffs brought

*Evans, Craven & Lackie, P.S.*
818 W. Riverside, Suite 250
Spokane, WA 99201-0910
(509) 455-5200; fax (509) 455-3632

an action for damages pursuant to 42 U.S.C. § 1983 against the defendants for wrongful death and a host of other state claims. In support of their claim pursuant to 42 U.S.C. § 1983, plaintiffs pointed to a number of different statutes under FNHRA that were allegedly violated by the acts and omissions of the defendants, including 42 U.S.C. § 1395i-3 and § 1396r. *Id.* at *3. Plaintiffs submitted in their complaint that "[t]he specific detailed regulatory provisions as well as the statutes in question create rights which are enforceable by the plaintiffs pursuant to 42 U.S.C. § 1983, as the language of these regulations and statutory provisions clearly and unambiguously creates those rights." *Id.* at *2. The court disagreed with the plaintiffs' position. *Id.*

In *Sanguinetti*, the court recognized that the Ninth Circuit had not spoken directly to the question of whether any portion of subsection (b) to both sections 1395i-3 and 1396r provided an individual right that can be vindicated under section 1983. *Id.* at 4. Two considerations led the *Sanguinetti* court to agree with the *Hawkins* court's findings (discussed *supra*):

- First, the language of 1396r (b)(1)(A) is exactly the sort of broad "aggregate or systemwide" policy and practice statement that the *Price v. City of Stockton*, 390 F.3d 1105, 1110 (9th Cir.2004) court held does not indicate an intent to create a private right because the *subject* of that subsection, and others, is the nursing home, not the resident (emphasis theirs). Nothing in the language of any of the provisions cited to by plaintiffs

DEFENDANTS' MOTION TO DISMISS - page 13

unambiguously indicates the intent of Congress to confer a right on patients that can be vindicated by way of section 1983.

- Second, the overarching structure of FNHRA and its Medicaid counterpart indicate that Congress had a specific intent to allocate individual rights *other than* rights to causes of action arising from lapses in quality of care (emphasis theirs). Among all the rights specifically granted to individual residents, none convey a right to be free from the possibility of negative outcomes of procedures or the right to sue when a negative outcome is experienced.

*Id* at *4-*5.

In a more recent Ninth Circuit case dealing with similar issues as *Sanguinetti*, the court found that two subsections of FNHRA, 42 U.S.C. § 1395i-3 (e)(3) and 42 U.S.C. § 1395i-3 (f)(3), did not confer a private federal right enforceable through 42 U.S.C. § 1983 because Congress did not clearly and unambiguously create the right that plaintiffs asserted. *Anderson v. Dooley*, WL 3162167 (N.D. Cal. 2016). There is a pending appeal in *Anderson* filed by the plaintiffs.

The *Anderson* court did note that its holding is consistent with the reasoning of the sizeable majority of courts across the country that have found FNHRA does not confer private federal rights. *See, e.g., Prince v. Dicker*, 29 Fed.Appx. 52, 54 (2d Cir. 2002); *Fiers v. La Crosse Cty.*, No. 15-CV-88-JDP, 2015 WL 5530258, at *7 (W.D. Wis. Sept. 18, 2015); *Duncan v. Johnson-Mathers Health Care, Inc.*,

*Evans, Craven & Lackie, P.S.*
818 W. Riverside, Suite 250
Spokane, WA 99201-0910
(509) 455-5200; fax (509) 455-3632

No. 5:09-CV-00417-KKC, 2010 WL 3000718, at *10 (E.D. Ky. July 28, 2010); *McCarthy v. 207 Marshall Drive Operations, LLC*, No. 615CV2121ORL18TBS, 2015 WL 9701089, at *2 (M.D. Fla. Dec. 24, 2015), *recommendation adopted*, No. 615CV2121ORL18TBS, 2016 WL 164306 (M.D. Fl. Jan. 13, 2016); *Hawkins v. Cty. of Bent, Colo.*, 800 F.Supp.2d 1162, 1166 (D. Colo. 2011); *Brogdon ex rel. Cline v. Nat'l Healthcare Corp.*, 103 F. Supp. 2d 1322, 1330 (N.D. Ga. 2000).

The Defendants urge the Court to adopt the reasoning and holdings of *Sanguinetti* and *Anderson* in addition to the numerous other cases from around the country that have found there is no private right of action enforceable through 42 U.S.C. § 1983 for alleged violations of FNHRA.

### iv.    <u>42 U.S.C. § 1983</u>

Plaintiff alleges the following in her Complaint:

> At all times material hereto the employees of CMC were acting under color of state law

> CMC adopted policies, regulations, and practices which directly resulted in the denial of John Shanklin's civil and constitutional right of quality care in the CMC facility.

> CMC failed to adequately train its employees as required by FNHRA.

> CMC ratified the acts of its employees that resulted in the deprivation of Plaintiffs civil rights to quality care.

DEFENDANTS' MOTION TO DISMISS - page 15

*Evans, Craven & Lackie, P.S.*
818 W. Riverside, Suite 250
Spokane, WA 99201-0910
(509) 455-5200; fax (509) 455-3632

It is well settled that section 1983 confers no rights in itself but is only a means of vindicating rights otherwise secured by the Constitution or laws of the United States. *Chapman v. Huston Welfare Rights Organization*, 441 U.S. 600, 617–618, 99 S.Ct. 1905, 60 L.Ed.2d 508 (1979). To state a claim under § 1983, a plaintiff must aver that a person acting under color of state law deprived him of a constitutional right or a right conferred by a law of the United States. *Wahl v. Charleston Ares Medical Center, Inc.*, 562 F.3d 599 (4th Cir.2009); *See Dowe v. Total Action Against Poverty*, 145 F.3d 653, 658 (4th Cir.1998). As previously referenced herein, in order to bring a § 1983 claim, a plaintiff must assert a violation of a federal right, not just a violation of a federal law. *Blessing*, 520 U.S. 329, 340.

In *Sanguinetti*, the court touched on this issue of a vague and amorphous right to quality care:

> What is painfully obvious about this action is that it is a completely garden variety medical malpractice action dressed in the clothes of rights violation. This raises a number of questions that cannot be directly answered. First and foremost, what precisely is the right and what constitutes a violation of it? Does Medicare or Medicaid guarantee a right against adverse outcome? Against procedural error? If there is a procedural error, is a right violated in the absence of an adverse outcome or must an injury result? The only possible answer to these imponderables is an implied contention that there is a federal "right" against malpractice whenever it occurs in an institution that receives Medicare or Medicaid funding. This is obviously not the

DEFENDANTS' MOTION TO DISMISS - page 16

case and the implied suggestion that simple malpractice should be a federal case boarders on specious.

WL 2521536 at *5.

While it is unclear on what basis Plaintiff is making her individual 42 U.S.C. § 1983 claim against Defendants, because there is no constitutional right to quality care and because alleged violations of FNHRA do not form the basis of a private right of action under 42 U.S.C. § 1983, Plaintiff cannot sustain a claim under 42 U.S.C. § 1983 for "deprivation of Plaintiffs civil rights to quality care."

## D.   The Court Should Decline Supplemental Jurisdiction over Plaintiff's State Law Claims due to the Dismissal of Plaintiff's Federal Claims

In addition to the federal claims discussed *supra*, Plaintiff has also alleged the following state causes of action in her Complaint: Wrongful Death pursuant to RCW 4.20 et. seq., Mr. Shanklin's pain and suffering pursuant to RCW 4.20.060, violation of RCW 74.34.200 (Vulnerable Adults), and intentional and negligent infliction of emotional distress. ECF No. 1, at pgs. 11-13. After the Court disposes of Plaintiff's federal claims as discussed *supra*, the Court will have a choice whether to exercise supplemental jurisdiction over Plaintiff's state law claims.

A federal district court with power to hear state law claims has discretion to keep, or decline claims under 28 U.S.C. § 1367(c). *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). *Gibbs* teaches that the

DEFENDANTS' MOTION TO DISMISS - page 17

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
29
30

exercise of supplemental jurisdiction should be rare when all federal claims have been dismissed before trial. *Id* at 726-27.

Under 28 U.S.C. § 1367(c), a district court "may decline to exercise supplemental jurisdiction over a claim" if:

> …
>
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
>
> …

*Kohler v. Rednap, Inc.*, 794 F.Supp.2d 1091, 1092 (C.D. Cal. 2011).

The Court should decline supplemental jurisdiction over Plaintiffs' state law claims under subpart 3 *supra*. In the usual case in which all federal law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine – judicial economy, convenience, fairness, and comity – will point toward declining to exercise jurisdiction over the remaining state law claims. 28 U.S.C. § 1367(c); *NorthBay Healthcare Group, Inc. v. Kaiser Foundation Health Plan, Inc.*, 305 F.Supp. 3d 1065 (N.D. Cal.2018); *See also Call v. Badgley*, 254 F.Supp.3d 1051 (N.D. Cal.2017). When the interests promoted by supplemental jurisdiction are no longer present because all federal claims have been dismissed before trial, a court should decline to exercise jurisdiction over

DEFENDANTS' MOTION TO DISMISS - page 18

*Evans, Craven & Lackie, P.S.*
818 W. Riverside, Suite 250
Spokane, WA 99201-0910
(509) 455-5200; fax (509) 455-3632

state-law claims. 28 U.S.C. § 1367(c); *Carnegie–Mellon*, 484 U.S. at 350 n. 7, 108 S.Ct. 614.

## III.    CONCLUSION

Defendants respectfully request (1) the Court dismiss Plaintiff's federal claims pursuant to Fed. R. Civ. P. 12(b)(1) or 12(b)(6), (2) decline to exercise supplemental jurisdiction over Plaintiff's state law claims and (3) dismiss the action in its entirety.

DATED this 9th day of November, 2018.

EVANS, CRAVEN & LACKIE, P.S.

By:    s/ James B. King, WSBA #8723
James B. King, WSBA #8723
Attorneys for Defendants
Evans, Craven & Lackie, P.S.
818 W. Riverside Ave., Ste. 250
Spokane, WA 99201
(509) 455-5200
(509) 455-3632 facsimile
jking@ecl-law.com

*Evans, Craven & Lackie, P.S.*
818 W. Riverside, Suite 250
Spokane, WA 99201-0910
(509) 455-5200; fax (509) 455-3632

## **CERTIFICATE OF SERVICE**

I hereby certify that on November 9, 2018, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System which will send notification of such filing to the following:

Jerry Moberg
Patrick Moberg
Jerry Moberg & Associates, PS
P.O. Box 130
124 3rd Ave. SW
Ephrata, WA 98823
**jmoberg@jmlawps.com**
**pmoberg@jmlawps.com**

**EVANS, CRAVEN & LACKIE, P.S.**
By s/ James B. King, WSBA #8723
    James B. King, WSBA #8723
    Attorneys for Defendants
    Evans, Craven & Lackie, P.S.
    818 W. Riverside Ave., Ste. 250
    Spokane, WA 99201
    (509) 455-5200
    (509) 455-3632 facsimile
    jking@ecl-law.com

*Evans, Craven & Lackie, P.S.*
818 W. Riverside, Suite 250
Spokane, WA 99201-0910
(509) 455-5200; fax (509) 455-3632