FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Apr 15, 2019

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| MILDRED SHANKLIN, individually and as Personal Representative of the Estate of John Shanklin,<br><br>                 Plaintiff,<br><br>   v.<br><br>COULEE MEDICAL CENTER, a medical care facility that is fully owned and operated by the Douglas, Grant, Lincoln, & Okanogan County Hospital District No. 6; DOUGLAS, GRANT, LINCOLN, and OKANOGAN COUNTIES PUBLIC HOSPITAL DISTRICT NO. 6, a public entity doing business as the Coulee Medical Center; ROGER ST. CLAIRE, acting in his capacity as an employee of Coulee Medical Center; LARRY J. RUSE, acting in his capacity as an employee of Coulee Medical Center; JOYCE BODEAU, acting in her capacity as an employee of Coulee Medical Center; and KARIE SCHULER, acting in her capacity as an employee of Coulee Medical Center;<br><br>                 Defendants. | NO: 2:17-CV-377-RMP<br><br>ORDER GRANTING DEFENDANTS' MOTION TO DISMISS |

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS ~ 1

BEFORE THE COURT is Defendants' Motion to Dismiss for Failure to State a Claim, ECF No. 15. Defendants Coulee Medical Center; Grant, Lincoln, & Okanogan County Hospital District No. 6; Roger St. Claire; Larry J. Ruse; Joyce Bodeau; and Karie Schuler move to dismiss Plaintiff Mildred Shanklin's Complaint, ECF No. 1. A hearing was held in this matter on March 22, 2019. Ms. Shanklin was represented by Jerry Moberg. Defendants were represented by James King. The Court has considered the parties' arguments, briefing, and the record, and is fully informed.

## BACKGROUND

The following are the facts as alleged in Ms. Shanklin's complaint, ECF No. 1. Ms. Shanklin is the surviving spouse of John Shanklin. *Id.* at 4. In May of 2014, Ms. Shanklin alleges that Mr. Shanklin suffered a stroke that left him weak on one side of his body. *Id.* This made Mr. Shanklin a high risk to fall and confined him to a wheelchair at most times. *Id.* For over a year following Mr. Shanklin's stroke, Ms. Shanklin cared for him at their home. *Id.* Ms. Shanklin alleges that Mr. Shanklin did not fall a single time under her care. *Id.*

By May of 2016, Ms. Shanklin alleges that she was unable to provide her husband with the 24-hour care that he needed. ECF No. 1 at 4. She claims that she placed him in a nursing home care facility in a town sixty miles away from Ms. Shanklin's home for about six months. *Id.* Throughout those six months, Ms. Shanklin claims that Mr. Shanklin did not fall a single time. *Id.* However, Ms.

Shanklin claims that she was unhappy with the distance that she had to travel to see her husband, so she sought a closer nursing home in which to place Mr. Shanklin. *Id.* at 4–5. She alleges that she placed her husband into the care of Defendant Coulee Medical Center ("CMC"). *Id.* at 5.

At CMC, Ms. Shanklin alleges that her husband was identified as a patient with a high risk of falling. ECF No. 1 at 5. According to Ms. Shanklin, however, CMC and the individual Defendants, who were all responsible for Mr. Shanklin's care, failed to or refused to develop a care plan that would protect him from falling. *Id.* As a result, Ms. Shanklin alleges that Mr. Shanklin fell four times over a period of four months. *Id.* at 5–7. Ms. Shanklin claims that Defendants failed to properly supervise Mr. Shanklin to keep him from falling or take precautions to prevent any injury resulting from the falls. *Id.* Three days after Mr. Shanklin's fourth fall, Mr. Shanklin passed away. *Id.* at 7–8.

Ms. Shanklin filed this complaint individually and as the personal representative of her husband's estate against Defendants for violations of the Federal Nursing Home Reform Amendments ("FNHRA") and several claims under state law. ECF No. 1 at 8–13. Defendants now move to dismiss the complaint, arguing that the FNHRA does not apply to them and that the FNHRA is not enforceable through section 1983. ECF No. 15.

/ / /

/ / /

**LEGAL STANDARD**

After a defendant files its answer, the defendant may move for judgment on the pleadings.[1] Fed. R. Civ. P. 12(c). Similar to a Rule 12(b)(6) motion, the court accepts all factual allegations in the complaint as true and construes them in the light most favorable to the non-moving party. *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009). The analysis for a Rule 12(c) motion is "substantially identical" to the analysis for a Rule 12(b)(6) motion. *Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012). Judgment on the pleadings is appropriate when there is no issue of material fact in dispute and the moving party is entitled to judgment as a matter of law. *Fleming*, 581 F.3d at 925.

A plaintiff's complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible when the plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While the Court construes the facts in the light most favorable to the non-moving party, a court is not required to "assume the truth of legal conclusions merely because they are cast

---

[1] Because Defendants have filed an answer, ECF No. 10, the Court construes Defendants' Motion to Dismiss under Rule 12(b)(6) as a Motion for Judgment on the Pleadings under Rule 12(c). Fed. R. Civ. P. 12(c) ("After the pleadings are closed—but not early enough to delay trial—a party may move for judgment on the pleadings.").

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS ~ 4

in the form of factual allegations." *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (per curiam) (internal quotation omitted). A plaintiff's complaint cannot survive if it is solely supported by "conclusory allegations of law and unwarranted inferences." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004).

## DISCUSSION

Defendants make two arguments as to why Ms. Shanklin's FNHRA claim should be dismissed. First, they argue that CMC is not a "nursing facility" that is regulated by the FNHRA. ECF No. 15 at 4. Second, they argue that the FNHRA is not enforceable through section 1983 litigation. *Id.* at 8.

***Coulee Medical Center's Status as a Nursing Facility as Defined by the FNHRA***

The parties dispute whether CMC is a "nursing facility" under the FNHRA. ECF No. 15 at 4; ECF No. 21 at 8.

When interpreting a statute, the Court begins with the statute's text. *United States v. Neal*, 776 F.3d 645, 652 (9th Cir. 2015). "We interpret statutory terms in accordance with their ordinary meaning, unless the statute clearly expresses an intention to the contrary." *Id.*

Under the FNHRA, a "nursing facility" is defined as "an institution (or a distinct part of an institution) which (1) is primarily engaged in providing to residents (A) skilled nursing care and related services for residents who require medical or nursing care, (B) rehabilitation services for the rehabilitation of injured, disabled, or sick persons, or (C) on a regular basis, health-related care and services

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS ~ 5

to individuals who because of their mental or physical condition require care and services (above the level of room and board) which can be made available to them only through institutional facilities, and is not primarily for the care and treatment of mental diseases; (2) has in effect a transfer agreement (meeting the requirements of section 1395x(l) of this title) with one or more hospitals having agreements in effect under section 1395cc of this title; and (3) meets the requirements for a nursing facility described in subsections (b), (c), and (d) of this section."[2] 42 U.S.C. § 1396r(a).

Under this statutory definition, Defendants argue that CMC is not a "nursing facility" because the Centers for Medicare and Medicaid Services ("CMS") designated CMC as a "critical access hospital" ("CAH").[3] ECF No. 15 at 6–7. However, under the FNHRA, a nursing facility is defined by the care it provides

---

[2] The same definition applies to a "skilled nursing facility," absent subsection (a)(1)(C), in a separate statute. *See* 42 U.S.C. § 1395i-3(a).

[3] In support of this argument, Defendants rely on the Declaration of Ramona Hicks, ECF No. 17. Generally, a Court should not consider matters outside the pleadings when considering a motion for judgment on the pleadings. Fed. R. Civ. P. 12(d). However, a Court can take judicial notice of facts not subject to reasonable dispute that are generally known or can be accurately and readily determined from reliable sources. *Lee v. City of L.A.*, 250 F.3d 668, 688–89 (9th Cir. 2001); Fed. R. Evid. 201. Defendants argue that Ms. Hicks's declaration is not subject to reasonable dispute. ECF No. 15 at 7 n.1. Without a basis to conclude that the information in Ms. Hicks's declaration is not subject to reasonable dispute, the Court cannot consider Ms. Hicks's declaration for the purposes of this motion. Therefore, the Court declines to take judicial notice of Ms. Hicks's declaration and will not consider it to resolve this motion.

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS ~ 6

rather than a designation made by a government entity. 42 U.S.C. § 1396r(a). There is nothing in the text of the FNHRA that precludes a hospital like CMC from being both a nursing facility and a CAH. *See* 42 U.S.C. § 1396r. Defendants argue that proving that CMC is not a nursing facility is essentially asking them to prove a negative. ECF No. 26 at 4. While that is true, that is the reality of the judgment on the pleadings standard: the Court must construe all facts in favor of the non-moving party. *Fleming*, 581 F.3d at 925. Construing the facts in favor of Ms. Shanklin, the Court finds that the complaint plausibly alleges that CMC is a nursing facility under the definition in the FNHRA.

*The Enforceability of the FNHRA through Section 1983*

The parties dispute whether the FNHRA is enforceable through a section 1983 action. ECF No. 15 at 8; ECF No. 21 at 17.

Section 1983 allows a plaintiff to bring actions against people who, under the color of state law, deprive the plaintiff of "any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. However, in order to seek relief under section 1983, "a plaintiff must assert the violation of a federal *right*, not merely a violation of federal *law*." Blessing v. Freestone, 520 U.S. 329, 340 (1997) (emphasis in original). To determine whether a federal statute confers a federal right that may be enforced through section 1983, the court considers three factors. First, Congress must have intended the law to benefit the plaintiff. *Id.* Second, the right must not be so "vague and amorphous" that its enforcement

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS ~ 7

would strain judicial competence. *Id.* at 340–41. Third, the statute must impose a binding obligation on the states couched in mandatory, rather than precatory, language. *Id.*

When the statutory provision in question is enacted pursuant to Congress's spending power, the provision provides no basis for section 1983 enforcement unless Congress speaks with a clear voice and manifests an unambiguous intent to confer individual rights. *Gonzaga Univ. v. Doe*, 536 U.S. 273, 280 (2002). "In legislation enacted pursuant to the spending power, the typical remedy for state noncompliance with federally imposed conditions is not a private cause of action for noncompliance but rather action by the Federal Government to terminate funds to the State." *Pennhurst State Sch. & Hosp. v. Halderman*, 451 U.S. 1, 28 (1981). Because the FNHRA was enacted pursuant to Congress's spending power, the ultimate question for the Court is whether Congress spoke with a clear voice and manifested an unambiguous intent to create an individual right. *Gonzaga*, 536 U.S. at 280. If Plaintiff establishes the existence of the individual right, it is presumptively enforceable through section 1983.[4] *Id.* at 283–84.

---

[4] The parties dispute whether Ms. Shanklin was asserting a private right of action or enforcing the statute through section 1983. ECF No. 15 at 8; ECF No. 21 at 17. Because Ms. Shanklin asserts that Defendants were acting under color of state law, ECF No. 1 at 11, Ms. Shanklin's claim is a section 1983 claim. However, as the Supreme Court noted in *Gonzaga*, the individual rights analysis for a claim through section 1983 and a private right of action is the same. *Gonzaga*, 536 U.S. at 290. .

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS ~ 8

*Intent to Benefit the Plaintiff*

For a statute to create an enforceable right, the text must be "phrased in terms of the persons benefited." *Cannon v. Univ. of Chi.*, 441 U.S. 677, 693 n.13 (1979). Statutes that have an "aggregate" focus and are "not concerned with whether the needs of any particular person have been satisfied" do not create individual rights. *Gonzaga*, 536 U.S. at 288 (internal citations and quotations omitted). In *Gonzaga*, the Supreme Court held that the language "[n]o person . . . shall . . . be subject to discrimination" is the type of "individually focused terminology" that creates an enforceable federal right. *Id.* at 287.

Ms. Shanklin argues that Defendants violated several subsections of 42 U.S.C. § 1396r(b). "A nursing facility must care for its residents in such a manner and in such an environment as will promote maintenance or enhancement of the quality of life of each resident." 42 U.S.C. § 1396r(b)(1)(A). "A nursing facility must provide services and activities to attain or maintain the highest practicable physical, mental, and psychosocial well-being of each resident in accordance with a written plan of care which-- (A) describes the medical, nursing and psychosocial needs of the rest and how such needs will be met; . . . and (C) is periodically reviewed and revised by such team after each assessment under paragraph (3)." 42 U.S.C. § 1396r(b)(2)(A) and (C). "A nursing facility must conduct a comprehensive, accurate, standardized, reproducible assessment of each resident's functional capacity." 42 U.S.C. § 1396r(b)(3)(A). "The results of such an

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS ~ 9

assessment shall be used in developing, reviewing, and revising the resident's plan of care under paragraph (2)." 42 U.S.C. § 1396r(b)(3)(D). "To the extent needed to fulfill all plans of care described in paragraph (2), a nursing facility must provide (or arrange for the provision of)-- . . . (ii) medically-related social services to attain or maintain the highest practicable physical, mental, and psychosocial well-being of each resident; . . . (v) an on-going program, directed by a qualified professional, of activities designed to meet the interest and the physical, mental, and psychosocial well-being of each resident." 42 U.S.C. § 1396r(b)(4)(A)(ii) and (v).

District and circuit courts are split as to whether this language in section 1396r(b) is phrased with an intent to benefit the nursing facility residents. The courts that have held that section 1396r(b) creates enforceable rights have found that the "provisions are obviously intended to benefit Medicaid beneficiaries and nursing home residents, not the nursing home themselves." *Grammer v. John J. Kane Reg'l Ctrs.-Glen Hazel*, 570 F.3d 520, 527 (3d Cir. 2009). Even though the subjects of the phrases themselves are nursing facilities, several courts have held that the provisions of section 1396r(b) are "obviously intended to benefit Medicaid beneficiaries." *Concourse Rehab. & Nursing Ctr. Inc. v. Whalen*, 249 F.3d 136, 144 (2d Cir. 2001).

Other courts have held that the language of section 1396r(b) "is exactly the sort of broad aggregate or systemwide policy and practice statement" that does not

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS ~ 10

intentionally benefit nursing home residents or receivers of Medicaid. *Sanguinetti v. Avalon Health Care, Inc.*, No. 1:12-CV-0038 AWI SKO, 2012 WL 2521536, at *5 (E.D. Cal. June 28, 2012) (quotations omitted). According to these courts, the directives in section 1396r "are intended to direct the efforts of the facilities" rather than conferring "a right on patients that can be vindicated by way [of] section 1983." *Id.* Applying *Gonzaga* and *Blessing* to section 1396r(b), some courts have found that section 1396r(b) focuses on the persons regulated (nursing facilities) rather than the persons benefited (nursing facility residents) and, thus, is unenforceable through section 1983. *Hawkins v. Cty. of Bent, Colo.*, 800 F. Supp. 2d 1162, 1167 (D. Colo. 2011).

The section 1396r(b) provisions that Ms. Shanklin is attempting to enforce in this case are all phrased in terms of what the nursing facilities must do, rather than the protections that the patients must receive. 42 U.S.C. § 1396r(b). Because the nursing facilities are the subjects of the provisions in question, the provisions are not "phrased in terms of the persons benefited" and do not afford individual rights to nursing facility patients. *Cannon*, 441 U.S. at 693 n.13. While the provisions mention the nursing facility residents and the benefits that they should receive from the nursing facilities, such as the "maintenance or enhancement of the quality of life of each resident," the facilities' placement as the subject of the provisions, along with the fact that the FNHRA was passed under Congress's

spending power, show that Congress did not intend to confer individual rights with the FNHRA's language.

Ms. Shanklin argues that this Court should follow the reasoning from *Rolland* and *Dunakin*. ECF No. 21 at 21–28. In *Rolland*, the First Circuit held that several provisions of the FNHRA created individual rights enforceable through section 1983, including provisions under sections 1396r(b), 1396r(c), and 1396r(e). *Rolland v. Romney*, 318 F.3d 42, 53 (1st Cir. 2003). In *Dunakin*, the Western District of Washington held that certain provisions under section 1396r(e) were enforceable through section 1983. *Dunakin v. Quigley*, 99 F. Supp. 3d 1297, 1316 (W.D. Wash. 2015). However, these two cases differ from this case because the courts mainly analyzed section 1396r(e) as opposed to 1396r(b). *Rolland*, 318 F.3d at 53; *Dunakin*, 99 F. Supp. 3d at 1316; *see also Blessing*, 520 U.S. at 342 (holding that courts should focus their private rights analysis on "specific statutory provision[s]"). To any extent that these cases found that section 1396r(b) confers enforceable individual rights, the Court rejects their analyses.

Ms. Shanklin also urges this Court to adopt the reasoning of the *Grammer* court. ECF No. 21 at 22. In *Grammer*, the Third Circuit held that section 1396r(b), and the entire FNHRA, is "replete with rights-creating language," and is thus enforceable through section 1983. *Grammer*, 570 F.3d at 529. However, the *Grammer* Court stated that it was "not concerned that the provisions . . . are phrased in terms of responsibilities imposed on the state or the nursing home." *Id.*

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS ~ 12

at 530. The *Grammer* holding is inconsistent with the Supreme Court's holding in *Gonzaga*, and previously in *Cannon*, that a statute creating enforceable rights "must be phrased in terms of the persons benefited." *Gonzaga*, 536 U.S. at 274 (citing *Cannon*, 441 U.S. at 692 n.13). While the residents are certainly benefited by the FNHRA, those benefits or interests are not enforceable through section 1983 because the statute is not phrased with an intent to benefit the residents. *Id.* ("[I]t is *rights*, not the broader or vaguer 'benefits' or 'interests,' that may be enforced." (emphasis in original)). The language of section 1396r(b) does not satisfy the first *Blessing* factor. Therefore, the Court declines to follow *Grammer*.

### *Clear and Definite Right*

The second *Blessing* factor is that the right protected by the statute is "not so vague and amorphous that its enforcement would strain judicial competence." *Blessing*, 520 U.S. at 340–41. Courts that have found an enforceable right under section 1396r(b) have said that the rights are "clearly delineated by the provisions" because "[t]he repeated use of the phrases 'must provide,' 'must maintain' and 'must conduct' are not unduly vague or amorphous such that the judiciary cannot enforce the statutory provisions." *Grammer*, 570 F.3d at 528. Courts that have not found an enforceable right in the FNHRA have held that its provisions refer only to "generalized, vague, amorphous quality-of-life interests that are insufficiently definite to be justiciable." *Kalan v. Health Ctr. Comm'n of Orange Cty., Va.*, 198 F. Supp. 3d 636, 645 (W.D. Va. 2016).

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS ~ 13

It is unclear how Ms. Shanklin's FNHRA claim would be proven or disproven if this case were to proceed to trial. For example, under one provision that Ms. Shanklin wishes to enforce, a nursing facility must "promote maintenance or enhancement of the quality of life of each resident." 42 U.S.C. § 1396r(b)(1)(A). Under another provision, a nursing facility must provide "medically-related social services to attain or maintain the highest practicable physical, mental, and psychosocial well-being of each resident." 42 U.S.C. § 1396r(b)(4)(A)(ii). Enforcing these provisions would strain judicial competence, as it is unclear what standards the Court would use to evaluate whether Defendants violated Mr. Shanklin's right to "quality of life" or "the highest practicable physical, mental, and psychosocial well-being." The provisions that Ms. Shanklin wants to enforce are filled with subjective language without clear standards for the Court or the jury to evaluate in a potential trial.

The *Grammer* court found that the second *Blessing* factor was met because of the "repeated use of the phrases 'must provide,' 'must maintain' and 'must conduct'" throughout the statute. *Grammer*, 570 F.3d at 528. But this analysis is more appropriate in the third *Blessing* factor, which asks whether the statute unambiguously binds the states. *Blessing*, 520 U.S. at 341.

Even if the FNHRA included rights-creating language that intended to benefit nursing facility residents like Mr. Shanklin, the Court finds that those rights are too vague or amorphous to be enforced through section 1983 litigation. The

Court finds that section 1396r(b) does not pass the *Blessing* test's first or second elements. The Court finds that section 1396r(b) is not enforceable through section 1983, and therefore is not a claim upon which relief can be granted. The Court dismisses Ms. Shanklin's FNHRA claim with prejudice.

*State Law Claims*

Defendants argue that the Court should dismiss the state law claims upon dismissal of the FNHRA claim as a matter of discretion. ECF No. 15 at 17; 28 U.S.C. § 1367(c). Ms. Shanklin's other claims are all state law claims over which the Court would have to exercise supplemental jurisdiction. ECF No. 1 at 11–14. Ms. Shanklin wants the Court to maintain supplemental jurisdiction over her state law claims. ECF No. 21 at 31.

A district court has supplemental jurisdiction over claims that "form part of the same case or controversy" of claims over which a district court has original jurisdiction. 28 U.S.C. § 1367(a). However, if a district court dismisses all claims over which it has original jurisdiction, the court "may decline to exercise supplemental jurisdiction" over the remaining claims. 28 U.S.C. § 1367(c)(3). If all original jurisdiction claims are dismissed before trial, it is common practice to decline to exercise jurisdiction over any remaining state law claims. *See Acri v. Varian Assocs., Inc.*, 114 F.3d 999, 1001 (9th Cir. 1997).

Because the Court no longer has original jurisdiction over Ms. Shanklin's claims, the Court finds no basis to exercise supplemental jurisdiction over her

remaining state law claims.  *See* 28 U.S.C. § 1367(c)(3); *Acri*, 114 F.3d at 1001.  Therefore, Ms. Shanklin's state law claims are dismissed without prejudice for lack of subject matter jurisdiction.

Accordingly, **IT IS HEREBY ORDERED**:

1. Defendants' Motion to Dismiss, **ECF No. 15**, is **GRANTED**.

2. Plaintiff's 42 U.S.C. § 1983 claim under the Federal Nursing Home Reform Amendments, 42 U.S.C. § 1396 *et seq.*, is **DISMISSED with prejudice**.

3. Plaintiff's state law claims are **DISMISSED without prejudice**.

4. All pending motions are **DENIED as moot**.  All pending hearing dates are stricken.

5. Judgment shall be entered in favor of Defendants.

**IT IS SO ORDERED**.  The District Court Clerk is directed to enter this Order, provide copies to counsel, and **close this case**.

**DATED** April 15, 2019.

                                          *s/ Rosanna Malouf Peterson*
                                        ROSANNA MALOUF PETERSON
                                          United States District Judge